The next matter, number 202131, United States v. Donovan J. Rivera-Medina. At this time, would counsel for the appellant introduce himself on the record to begin. Good morning, your honors. Good morning. Chief Judge Barron, may it please the court. Daniel Marks for the appellant, Donovan Rivera-Medina. Not asked to reserve two minutes for public comment. In initially accepting and then abruptly rejecting the parties' joint recommendation for a 96-month sentence, and instead opposing a 108-month sentence, the district court committed three related procedural errors. It failed to adequately explain that dramatic upward variance from a sentencing guideline range of 57 to 74 months. It relied on clearly erroneous facts, for which there is no support whatsoever in the record. And it disregarded important mitigating facts about the appellant's state of mind at the time of the offense. As always in these cases, as this court has made very clear, when wading through a sentencing proceeding, it's incumbent on the appellate panel to figure out the driving force, that's the language from Rivera-Barrios, which has been repeated, over and over again, the driving force is behind the sentencing judge's decision. In this case, there's no question the driving force was the possession of a machine gun. In fact, the district court judge gave almost words for words to stop the speech that's been given in numerous cases in which this court has reversed, vacated, and remanded for resentencing upwardly variant sentences in machine gun possession cases. Because that concern relates to universal concerns about machine guns, which relate to all cases, and it's not offense or offender-specific, but deals with aspects of machine guns that are undoubtedly baked into the guidelines for an offense that is the possession of a machine gun. And here, it's a modified Glock pistol. The court's very familiar with these. These are the machine guns that are present in almost every one of these cases. What about the position of defendants in the cases you're referring to? Well, look, of course there are factors, and the government points to some. I think the key moment in the sentencing hearing is at page 800, where after the objection is made to the rejection of the joint recommendation, the district court judge cites two factors, which arguably put my client in a different situation than, say, Rivera-Barrios or Carrasquillo-Sanchez. They're both improper bases, and neither justifies the sentence. The first is the amount of ammunition. And this came up yesterday in the argument. So Rivera-Barrios says, unless there's some kind of substantial cache of ammunition, the fact that someone has a high-capacity magazine with a machine gun, that's peanut butter and jelly. Those things go together. It's not a separate basis for an enhancement. Now, I know Carrasquillo-Sanchez, Garcia-Perez, other cases that have later dealt with the ammunition question are less clear on whether that was a factor to be relied on. But here, the quantities are almost identical to what the court had in Rivera-Barrios, where it said, that's not enough. It couldn't be independently justified by Rivera. So that's factor number one. It can't be enough. The second is the court's insistence that Mr. Rivera may have pointed a gun at police officers while they were arresting his brother. That's simply not true. That never happened. In fact, there are multiple aspects of that statement that have no basis in the record. His brother isn't even at the home. The police aren't conducting an arrest. So then he's trying to execute a warrant. Isn't that correct? They had a warrant related to a child custody matter, a child custody payment matter, and they're looking for Donovan Rivera Padilla's brother. Why does all that matter when the judge focused so much on the fact that they pointed a machine gun at cops? Well, I think it matters because the judge has in his mind, what's clear from the way he describes it twice in the record, and I don't think this can be dismissed as a slip of the tongue. The court already rejected that argument by the government in Cordero alone. He has a vision of what's happening, is that my client is using a gun, knowingly pointing it at police officers to stop them from engaging in legitimate police activities. He's knowingly pointing it at people who, it turns out, are police officers, right? He only said it didn't matter whether he knew they were police officers, right? I respectfully disagree. In fact, that's the third of the procedural objections here. He never engages with the question of whether or not a client knows that these plainclothes people who get out of two unmarked cars near a house near a Mozart burrito earn themselves. Justice Marks, if I could, let me ask you, you all, the defense recommended an upward variance. Why? Well, there were multiple factors. One had to do with the resolution of a concurrent case, a prior case, that was resolved around the same time to a plea to one count information in this prison of a felony for which my client served a 24-month sentence. I know concurrent to the 108 months, which means he's really got an 11-year sentence from the same judge. So it was part of a global resolution of two cases. Concurrent or consecutive? Consecutive, Your Honor. I thought you just said concurrent. No, I apologize. Concurrent case. He had two cases in the District of Puerto Rico at the same time. The first gets resolved. He's now serving 180 months consecutive to the 24 he had in the other case. But why was there an upward variance? Why did you recommend an upward variance in this case? Out of recognition. Well, for both reasons. One, because it was part of a global resolution of both of these two cases. And out of recognition, as Chief Judge Barron started by pointing out, that there are averaging factors here. I mean, no one's denying the fact. The question that I struggle with is, given that everybody agreed the upward variance is appropriate, this is not a science. The ageing of the difference between an upward variance to 96 and to 108 doesn't seem all that dramatic. Not in my year in prison, I know. But as I say, it's not a science. It's a judgment. Right. Not in my year either, Your Honor. But this court has recently said a year is quite a lot when it comes to these kinds of cases. In fact, just recently used the analogies of a nine-month pregnancy, a year in suit. I think the thrust of the question that would be helpful if you could engage with this, we've definitely made clear that even a doubling that's just a year, resulting in just an extra year, can't be justified if the grounds for the variance are impermissible grounds for a variance. But if I understood you politically with Judge Hamilton just now, you're not saying that there are no aggravating factors that could support a variance. The contention is it can't support a variance of this amount. That's a pretty different type of argument, and when there are aggravating factors, the question becomes, if you explain why it's 108 rather than 96, as opposed to if you give any justification for going outside the guideline, we have not. I don't know of cases of ours that demand additional explanation beyond, here are the aggravating factors, and I settle on this amount, as opposed to saying, well, let me tell you why each additional month can be related to one of those factors. We haven't required that. Well, I think the court has pointed in that direction. I'm not sure there's a case on exactly the scenario you just described, but in Reyes-Correa, for example, citing Flores-Natur, the court says, when there's a joint recommendation for an upwardly varying sentence, and the court rejects that, of course, it doesn't have to accept it. The plea agreement says he doesn't have to accept it. But when the court rejects that, it's incumbent on the court to give an adequate explanation as to why the even higher variance is based on facts of the record. And here there are only two facts, Your Honor, that he points to once that objection is made, saying 96 is not. Didn't he also point out that Mr. Rivera was facing a 30-year mandatory remittal? Did he make a result? Yes, he did. May I just take a moment to answer that question? There's a few different pieces to the answer, but I'll try to be succinct. First, yes, he did point that out prior to this colloquy after the objection was made, so it doesn't come back to that point. But in this scheme of arguing yesterday— Surely the district judge doesn't have to go back and repeat everything in response to the objection. No, but in terms of determining what the driving force of the sentence is, he doesn't come back to that. That's not one of the things he emphasizes. Second, there's no finding or stipulation here that this gun is used in furtherance of a crime of drug trafficking. So that actually is an evidentiary basis, so that makes it different from other cases where there's a stipulation. Is that objective? There's no discussion of it one way or the other. I mean, it objects not specifically, Your Honor. Was there any argument that that finding was unjustified? Yes, there's a broad objection, not with exquisite precision, as this court has said, that the joint recommendation includes all factors, including the uncharged conduct. He says that. And so here, to rely on the notion, in the absence of a stipulation or a finding, that he could have been facing 30 months when there's no evidence of any furtherance finding. But I thought earlier he was in possession of both the marijuana and the machine gun. That's right. The First Circuit law is clear that the temporal or geographic proximity of the gun and the marijuana is not enough to establish any furtherance of an underserved law. And one last question. Is there anything – if I understand when this offense was committed, he was on bond for a separate machine gun offense? Yes. Did the district court refer to that fact? Yes. And how is that not a problem? So it's not a problem for a number of reasons. One is it's considered within the joint recommendation. It's already accounted for in the guidelines because he gets a 3147 enhancement, and he's separately sentenced by the same judge for that possession. It's a little bit like when we have an evidentiary picture. You can take each little one. You say, that alone is not enough. That alone is not enough. And we have said, just the problem of the danger of a machine gun is not enough to draw it there. But we've also said, but it can be relied upon in conjunction with other aggravating factors. And here, as we continue this column, it seems like you keep acknowledging there are other aggravating factors and then you just emphasize how that one alone is not enough. But as I take the district court, why can't we just read him to be saying, in light of the various aggravating factors and the special danger of machine guns, I conclude this is where it's set a year higher than you all recommend? Because in the language of this court, all this panel can do is look at what the judge did. And in this case, after the objection, he points to two factors, one of which has been rejected by the circuit, and the other is based on and clearly around the special harm. I understood. So just jumping in, is the thrust of your argument that he relied upon an improper factor or that there was not sufficient explanation for the variance? Well, it's both, Your Honor. There's not an adequate explanation, and part of the problem, they bleed into each other. It's hard to disentangle them because one of the factors he relies on has no factual basis. So I'll acknowledge— That's the only impermissible factor you're identifying. No, the ammunition is an impermissible basis for an upward variance under circuit law. The pointing a gun at a police officer while arresting someone— Even when you're out on bond from a machine gun? It's just the quantity of ammunition. Yes, this court has said that quantity of ammunition is not independently a factor for an upward variance. It's baked into the machine gun gun. All right, so you're relying on ammo and pointing. Well, I'm identifying the two factors the judge relies on. What he says matters to him when he says, I need to go above 96 all the way to 108. Those are the two factors he identifies. That's what he did, one of which has no basis in the record.  Thank you. Thank you, Your Honor. Judge Thompson, you have more than one death. Okay, thank you. Thank you, counsel. At this time, if counsel for the government would please introduce herself on the record to begin. Good morning, Your Honors. May it please the court. Mahogany Reed for the United States. The sentencing record in this case, I think, directly refutes Mr. Rivera's claims of procedural error. And I'll start with his contention that the district court failed to adequately explain its reasons for imposing an upwardly varying sentence. The district court did not exclusively rely on the fact of machine gun possession to justify its upward variance. I point the court to pages 893 through 894 of the appendix where the district court cited five separate factors that it believed warrants a varying sentence above the guidelines range, including that he pointed a gun at officers when they were executing an arrest warrant, that he fled and dropped his gun when officers identified themselves, that he was on bail or out on bond when he committed the underlying offense, that he possessed additional ammunition, and that he could have been charged with a more severe offense, that is, machine gun possession and furtherance of drug trafficking, which carried a 30-year mandatory minimum. Mr. Rivera has contended that the amount of ammunition in this case is inconsistent or is consistent with machine gun possession and therefore is not an appropriate basis for imposing an upwardly varying sentence. But even assuming that's true and the government believes that because he possessed additional ammunition while out on bond, after he pointed a firearm at police officers, the lethality of the additional ammunition was especially obscure here. But even assuming the possession of additional ammunition is consistent with firearm possession as contemplated by the guidelines, we think that because the court identified additional factors that warranted a variance in this case, that the explanation incorporating those additional facts was procedurally proper. Well, it's not that there's not agreement that the aggravating factors may warrant an increase. It's how do we go about trying to assess whether the increase is justified? It's like, how do we review that? Because everyone said, okay, there's justification for something that was relied upon to the extent that we can help. We can't help influence it, and then in some way, it's entering a plea in the first place. Right. So if I'm understanding your question correctly, Your Honor, you're asking how do we know from the record why the district court added the 12 months over the agreed-to recommended sentence. And I think we know that based on the sentencing record itself. The district court, the same factors I just listed, I think the district court explained accordingly. This is also at page 894. The court went through the factors and said, accordingly, the court reconsiders the fact that 96 months is a proper sentence and enters judgment of 108 months sentence. I think that's an explicit explanation for the reason to believe 96 months in this case was inappropriate. Of course, on that account, we then just shift to, if there's a challenge, it's just a substantive reason for this challenge. Is 108 months permissible for those factors, and that's just a different standard? That's right, Your Honor. And we believe that a 108-month sentence in this case was substantively reasonable, not only because Mr. Rivera agreed that a 96-month sentence was defensible in this case, and so an additional 12 months is certainly defensible, but Mr. Rivera hasn't identified a reason why the 108-month sentence is not defensible or substantively reasonable in this case. Mr. Reed, can I ask you, there are several cases before the court this week in which this judge focused on special dangers posed by handguards converted to operate automatically. I'd be interested in your views on whether the district judge needed to make a separate or special evidence-sharing record on that point or whether that's the sort of knowledge that a district judge can draw on, much as, say, a district judge in Chicago might discuss his or her familiarity in public corruption and policy challenges posed there. Yes, Your Honor. I believe it's the government's position that the district court could draw on its extensive experience sentencing cases involving modified pistols that are modified to shoot by handguns in making a specific determination that it made in this case that the handgun was especially dangerous because it was impossible to control and pose a special risk to bystanders. And I would just emphasize that Mr. Rivera did not object to the district court's statement on that front below, and so the district court's kind of drawing on its experience in other cases and bringing that to bear in this case was appropriate. Could you also address the state of the record on the purpose of the police visit and the judge's comments about the intent to arrest the driver? I understand that there was no objection specifically on that point, and clarify that, but maybe you can tell us what was actually happening. Yes, Your Honor. There was no specific objection on that point, even as the district court gave defense counsel two additional opportunities to offer anything else in response to its explanation of its sentence. But I point this forward to page A-100 of the appendix, the clause that immediately precedes what Mr. Rivera has claimed is a clearly erroneous factual finding. The district court said in response to Mr. Rivera's objection, I just want to tell you that your recommended sentence doesn't consider everything because, and I emphasize, as I indicated, he aimed his weapon at a police officer when his brother was being arrested. And I think that as I indicated specifically refers back to the district court's unobjected to finding that the police officers were at Mr. Rivera's house to execute an arrest warrant to arrest his brother. So getting back to the point about the nature of the gun, it's still unclear to me why the guidelines don't reflect the commission's understanding about the dangerousness of a machine gun. And what additional considerations does the district court judge in particular have with the findings of the commission? So I guess my point on that front is that even assuming the guidelines themselves contemplate the general dangerousness of machine guns that are manufactured to operate as machine guns, they don't necessarily contemplate the special dangers associated with pistols modified to shoot by machine guns, which is what the district court referred to. How do we know that? Why would we assume that the guideline was predicated on people having manufactured machine guns rather than modified ones? Yeah, I think that's – I guess my response to that is because there's no reason in the guidelines to think that the commission was contemplating modified machine guns as to manufactured machine guns when it implemented this guideline provision. There's no reason to think they were contemplating manufacturing one? In other words, if the idea is this takes it out of the mine run case, what makes us think that the ordinary case is the getting your hands on a manufactured machine gun, which I would think in some ways would be more unusual to do that rather than to modify one. Well, I think it'd be – I guess you're saying it'd be more unusual to find a defendant in possession of a manufactured machine gun as opposed to a modified machine gun. I have no idea, but it doesn't seem inherently implausible to me that that would be true. I guess that's right. I think my response to that is there's – modifications to handguns are of relatively recent vintage as far as I can tell, and so there's no reason to think that – How old was the guideline? Well, I think it was added to the guidelines in the 1980s. And isn't it repromulgated every year? It's been repromulgated every year. I have not gone back to read toward the amendment of – The guideline that's applied here is being applied at a time when the idea that it would be modified shouldn't have been part of what's in that guideline. Well, the modifications to the gun make the gun fire like a machine gun. Right. And so there's no technical difference between one versus the other. I think there is a technical difference. I'm curious to see what you have to say, depending on what the Supreme Court says about this bump stop stuff. Curious to see the outcome in cardio, yes, Your Honor. I guess my response is that I think there is a difference between the way a modified machine gun or pistol – and that's an issue in this case – fires as opposed to a machine gun that's manufactured to fire as a machine gun, including sort of safeties for bracing and the like. And I think that's what the district court specifically was referring to when it said that the modified pistol in this case was impossible to control using its words and was posing a special risk of danger to bystanders when used. And that, combined with the fact that Mr. Rivera did point his firearm at police officers, kind of enhanced the dangerousness of the machine gun in this case. And I'll just make the final point that even assuming the district court's consideration of the machine gun in this case was, you know, contemplated within the guidelines range, the district court didn't specifically rely on that factor when it described or explained what factors supported the variance in this case. If the court has no further questions, we ask that you adjourn. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself back on the record to begin? He has a two-minute rebuttal. I'd just like to briefly circle back to a question Judge Hamilton asked, a point Judge Barron made, and an argument the government just presented. With respect to Judge Hamilton's question about the 30-year minimum mandatory, I just want to be sure to point out that this is not an uncommon factor in these kinds of cases. And it was most recently an issue in Muniz-Fontenay's. That's a plain-error reversal of banking, of sentence and on-demand, and one court notes that he faced the same charge. Second, and relatedly, Judge Barron, you observed that there are a number of aggravated factors here, and that's true. Of course, what we're really here to do is figure out whether or not the judge's upper variance from the guideline recommendation, the advisory guideline recommendation, was procedurally appropriate and subjectly reasonable. And the guideline here builds in the vast majority of the aggravated factors that we've been talking about this morning. Keep in mind the base offense level for possession of a machine gun is a 14. Mr. Rivera-Medina had nearly doubled that guideline by the time it was done being enhanced based on the aggravated factors that we've been talking about. That he's a prohibited person who uses marijuana, that was committed in the connection with another felony, the drug possession, and that he's out on bail at the time. That gets him all the way up to a 27 as a guideline for a possession of a machine gun that there's no evidence he ever used. So those sorts of factors. The problem is that when you recognize that there is a basis for an upward variance, and it's a matter of the defense and the government coming up with its best judgment about what it should be, and then the district court saying, no, my best judgment is different. And the question is, how do we say that your judgment, or what we justify, how do we justify saying your judgment is better than the district court's judgment, given that everybody recognizes that they were included in the warrant? So two pieces of an answer to that question, Your Honor. One is, it shouldn't be the case that a defendant who sincerely and genuinely acknowledges that their aggravated factors and an upward variance may be warranted should somehow be penalized, because then it's as if he can't contest the legitimacy of an even greater upward variance. That's what Reyes Correa is talking about when it says the rejection of a joint recommendation needs to be justified. The question is, you can contest it, but it's hard for me to see how you can contest it on grounds of lack of adequate explanation when the judge is saying the very factors that you've identified that justify the variance are what I'm relying on for the variance. You can certainly contest the substance of reasonableness of it. And then it's either, but we have a pretty forgiving standard for exactly what Judge Hamilton said. It's more art than science. Well, I think the difference here is, and this gets back to the first argument this morning, is you have a number of factors, and it's impossible to tell exactly how each one fits into the puzzle for the judge. We have a way to do that, and that's to go back and treat the guidelines as mandatory, right? Where everybody goes through the algebra problem, adding up the different factors, and if it's all spelled out to within at least a fairly tight range. But that's not the regime at this point. No, it's certainly not, but that doesn't mean the appellate courts have no role, and they've actively played that role in this circuit with respect to these kinds of cases. And again, it comes back to the basic question of when the objection is made, why is 96 admittedly an upward variance, a substantial one, not sufficient to cover all of the aggravating factors we've been talking about, all this court can do is look at what the judge said and did on the record, which was to point to two factors the judge said require another year, a significant increment, increase over the sentence. And those factors were the amount of ammunition in possession and a factual scenario, the pointing of a weapon at a police officer when his brother was being arrested, something that never happens. So you have a clearly erroneous factual finding, and whether it was specifically objected to or not, I'd be content on the plain error standard under this court's jurisprudence that that fact just appears out of nowhere. It's not true. Don't just pin down what you're saying. It's not that you didn't want a weapon. It's just the reason for the pointing that the court got wrong. Well, I think we could all agree, and I'm not sure the government can contest in its brief, that there's something significantly different between pointing a weapon at someone, for example, someone who you maybe think is coming to rob your house, for example, and trying to— I don't think that that quite is right when what you're pointing is a machine gun. So one possibility is you're in possession of a machine gun. Okay, we don't know what you're going to do with it. Would you ever use it? Is it just there? Lots of possibilities. Now we know not only do you have it, you're going to use it in the sense that you point it. That makes you potentially a different type of actor. You say, well, you only used it against potential intruders, but it's still an illegal machine gun that you're pointing at people, so that makes you somewhat different than a mere possessor of it. What's wrong with that reasoning? Well, because the law distinguishes all the time between— Yes, they do, but I'm just saying in this context we're talking about a machine gun. I wasn't suggesting that piece of it. Yes, we're talking about a machine gun, but the law distinguishes all the time between doing bad acts and doing bad acts vis-a-vis government officials or police officers. It's very clear from the record. I don't think it's a fair reading to say this judge wasn't bothered by the fact that he believed that Farrah Medina was trying to stop cops from arresting someone. That didn't happen. That's why we have ABPL. That's why there's some handlers who are doing things against police officers. That's why that fact matters to the judge. Thank you very much. Thank you. Thank you. That concludes oral argument in this case.